## THE PEOPLE OF PORTO RICO, Plff.,

### v.

## RUSSELL & COMPANY, SUCRS., S. en C., Dfts.

---

San Juan, Law, No. 1474.

REMOVAL OF CAUSES.

Removal of Causes—Suit by People of Porto Rico.
1. Although the Organic Act of Porto Rico, enacted by the Con-

NOTE.—On removal of cause from state to Federal court, see note in 37 L.R.A.(N.S.) 392.

People v. Russell & Co.

gress in 1917, known as the Jones Bill, constitutes a political entity known as the People of Porto Rico, and provides that such political entity may not be sued without its consent, this does not mean, that, when the People of Porto Rico makes itself a plaintiff in one of its own courts and none of the defendants are domiciled in this Island, and the controversy exceeds $3,000, these defendants are deprived of the right to remove the cause to the Federal court.

Removal of Causes—Rehearing before Succeeding Judge.

2. Where a motion to remand a cause from this court to the Insular court was argued prior to May 5, 1921, and on that day an order was signed by the then judge of this court denying the motion to remand, and on May 10, 1921, another judge who had been appointed received an application for a rehearing, such proceeding was in order and it was the duty of the succeeding judge to hear such petition upon its merits.

Removal of Causes—Limited Partnership—Nonresidence.

3. The fact that the defendants sued in the Insular court, and who caused the action to be removed to the Federal court, constitute a limited partnership, does not bar them from such removal to the Federal court if all the members of such limited partnership are domiciled outside the Island of Porto Rico.

People of Porto Rico—Judicial Knowledge as to Domicil.

4. The fact that the petition for removal does not state that the plaintiff is domiciled in Porto Rico is without force, because this court will take judicial notice of the fact that the People of Porto Rico as a political entity can have no possible domicil except in Porto Rico.

Removal of Causes—Federal Court Exclusive Judge.

5. The question as to whether a cause has been properly removed from the Insular court to the Federal court of Porto Rico must be determined solely by the latter court, and the action of the latter, if erroneous, may be corrected in subsequent appellate proceedings. Any action taken by an Insular court of Porto Rico upon this question of remand is without judicial force or effect.

Opinion filed July 25, 1921.

---

*Messrs. Salvador Mestre,* Attorney General of Porto Rico,

People v. Russell & Co.

and *Jos. A. Loret,* Assistant Attorney General of Porto Rico, counsel for the People of Porto Rico.

*Messrs. O. B. Frazer, Nelson Gammans,* and *F. Manuel Toro,* counsel for defendants.

ODLIN, Judge, delivered the following opinion:

This action was originally commenced by the People of Porto Rico as plaintiff in the district court of Ponce, being an Insular court, and in March of this present year the action was removed to this court upon the usual petition and bond, which petition set forth that the defendants Russell & Company were a limited partnership consisting of six members, none of whom were domiciled in Porto Rico, one of whom was a subject of the kingdom of Great Britain, two of whom were citizens of the state of New York, one of whom was a citizen of the state of New Jersey and two of whom were citizens of the state of Ohio.

After the transcript of the record had been filed in this court, counsel for the People of Porto Rico for some reason difficult to understand proceeded to apply to the supreme court of Porto Rico for a writ of certiorari seeking to set aside the order of the judge of the Insular court at Ponce, directing that the case should be removed to this court; and shortly after this application to the supreme court of Porto Rico and while the certiorari was there pending undecided, counsel for the People of Porto Rico also presented a motion in this court for a remand of the case. That motion was argued before the Honorable Peter J. Hamilton, who was the judge of this court prior to the 7th day of May, 1921, and Judge Hamilton denied the motion to re-

mand. The order of Judge Hamilton denying the motion to remand was signed on the 5th day of May, 1921. On the 10th day of May, 1921, after Judge Hamilton had retired from the bench and after the present judge had followed him upon the bench, counsel for the People of Porto Rico filed a petition for a rehearing, setting forth fifteen alleged grounds why the petition for a rehearing should be granted.

The first ground is that the petition for the transfer of the case, which petition was presented to the district court at Ponce, was vague and indefinite; but nothing is set forth to show wherein or whereby such petition is vague and indefinite. Therefore the statement in the first ground is a mere conclusion of law and is not worthy of consideration.

The second ground is that neither from the complaint filed in the said cause nor from any other document filed therein nor from the said petition for the transfer does there appear sufficient cause for removal to this court; but said second ground fails to set forth any specific facts showing such lack of sufficient cause; therefore the statement in the second ground is a mere conclusion of law and deserving of no consideration by this court.

The third ground for rehearing is that the petition for the transfer of the cause has neither any petitioner nor any petitioners. It is very evident that counsel who prepared this application for a rehearing have failed to read the petition for the transfer of the cause, because the names of the petitioners are distinctly set forth therein with all the allegations required by the rules of this court and by the acts of Congress.

The fourth ground of this application for a rehearing is that the said petition for the transfer of the case is so vague and

People v. Russell & Co.

indefinite that it is impossible to determine from its face who is the petitioner or who are the petitioners therein. It may be true that the counsel who prepared this application for a rehearing are unable to determine from the face of the petition for the transfer who the petitioners are, but it is very easy for this court to determine; and a simple reading of the petition shows that the petitioners asking for the transfer are the same parties who were originally sued by the People of Porto Rico in the Insular court at Ponce.

The fifth ground alleges that from the face of the petition for transfer it is impossible to determine whether the said petition is the petition of Havemayer, Dillingham, Morgan, Arnold, Orde and Welty; or whether the said petition is the petition of Russell & Company, Sucrs., S. en C. A simple reading of the petition shows that it is the petition of Havemayer, Dillingham, Morgan, Arnold, Orde, and Welty, who are the members of a limited partnership, and that the style and name of such limited partnership is Russell & Company, Sucrs., S. en C. In other words, counsel for the People of Porto Rico seem to be complaining that the parties whom the People of Porto Rico sued in Ponce are the same parties who have removed the case to the Federal court. It seems perfectly plain to the writer of this opinion that the People of Porto Rico is estopped to present any such complaint to any court.

The sixth ground set forth for this rehearing is that if the said petition for the transfer of the case is the petition of Havemayer, Dillingham, Morgan, Arnold, Orde, and Welty, it is the petition of persons who are not parties to the cause or of a person who is not a party to the cause. This sixth ground assumes that the People of Porto Rico brought a suit

against Havemayer, Dillingham, Morgan, Arnold, Orde, and Welty, while the original complaint filed in the court at Ponce showed that the People of Porto Rico did not sue these six gentlemen in their individual capacity.

The seventh ground set forth in this application for rehearing is to the effect that neither from the face of the complaint in said cause nor from any other document filed therein nor from the face of said petition for the transfer of the case does it appear that there is any diversity of citizenship between the People of Porto Rico and the defendants in said cause. Counsel preparing this application for a rehearing have evidently failed to read with care the record of this case, for the petition for the transfer of this case distinctly shows that the plaintiff does not know the citizenship of the said plaintiff, the People of Porto Rico, but believes that the plaintiff is a citizen of the United States domiciled in Porto Rico, and the petition further alleges that the said plaintiff is not a citizen of and is not domiciled in New York or New Jersey, or in Ohio, or in the Dominion of Canada. This court holds that the People of Porto Rico is capable of suing and is a creation of the Congress of the United States, and that it has a perfect right to sue in its own courts, but this right cannot deprive defendants, who are not citizens of Porto Rico and who are not domiciled in Porto Rico, from removing such suits to this court, where the amount involved exceeds $3,000, exclusive of interest and costs. This court, therefore, finds that the required diversity of citizenship does exist. It is, of course, conceded that if the People of Porto Rico had desired to commence this action in this United States district court against these same defendants this Federal court would beyond ques-

People v. Russell & Co.

tion have had jurisdiction of the case. Now, then, can it be argued that, by choosing the Insular court at Ponce for the institution of this action, the defendants were thereby deprived of the right of removal? This seventh ground, to my mind, has no force whatever.

The eighth ground is, to my mind, extremely ingenious, but without legal force. It seeks to prevent the removal of the cause from the Insular court to the Federal court upon the theory that, while the individual inhabitants of the Island of Porto Rico have been made citizens of the United States by act of Congress (except the 288 misled inhabitants who declined to accept such citizenship), the People of Porto Rico as a body politic is without citizenship; and the claim is then made that because the People of Porto Rico is without citizenship there cannot exist any diversity of citizenship between the People of Porto Rico as a body politic and any person or persons, natural or juristic. It has been expressly enacted by Congress that, while the People of Porto Rico as a body politic may not be sued without the consent of the People of Porto Rico, still such consent has been given under certain conditions by the legislature of Porto Rico herself; and it has been further held that the People of Porto Rico may be the plaintiff in a lawsuit against other parties, and it has been also held by the circuit court of appeals at Boston that the People of Porto Rico may be the intervener in a suit pending between A and B. Therefore, it is clear to me that counsel for the People of Porto Rico may not be heard to complain that the People of Porto Rico lack citizenship so as to prevent in every case the removal of an action properly commenced by the People of Porto Rico in the Insular court when such litigation might

have been begun by the People of Porto Rico in the Federal court, if so desired.

The ninth ground sets forth that the People of Porto Rico is not a citizen of the United States. To my mind it is inconceivable that the inhabitants of Porto Rico are lawfully citizens of the United States and that the People of Porto Rico, who is made up of the inhabitants of the Island of Porto Rico, may make the claim that the People of Porto Rico is not a citizen of the United States. And it is surprising to the writer of this opinion that the Attorney General of Porto Rico should put himself upon record as claiming that the People of Porto Rico as a body politic disclaims citizenship of the government of the United States.

The tenth ground is based upon the claim that the People of Porto Rico has no domicil whatever. Sufficient to say that this court will take judicial knowledge of the fact that the People of Porto Rico as a body politic can only have one domicil, and that domicil is the Island of Porto Rico. If the People of Porto Rico had no domicil, the People of Porto Rico could have no existence. I cannot conceive of a body politic without a domicil.

The eleventh ground sets forth that the People of Porto Rico is not domiciled in the Island of Porto Rico. To me it seems that this statement approaches a degree of levity, and ridiculousness not properly embodied in formal court pleadings. If the People of Porto Rico as a body politic is not domiciled in the Island of Porto Rico, inquiry naturally arises, where is that body politic domiciled? The discussion of claims of this nature seems to me to be most puerile and most useless.

Coming to the twelfth ground of this application for a re-

hearing counsel for the People of Porto Rico say that it appears from the face of the complaint that the defendants constitute a civil, agricultural partnership "in commendam" organized under the laws of Porto Rico; and there is nothing in any document filed in said cause or in the said petition for the transfer of the case which contradicts in any manner whatever the said allegation of the complaint. It is the opinion of this court that if these six gentlemen whose names have been given were to come to Porto Rico and were to invest their capital in the form of a corporation and obtain a charter from the People of Porto Rico, such corporation, if made the defendant in this cause, would not be allowed, of course, to remove the action to this Federal court; but it is very clear that these six gentlemen, citizens of various states and domiciled outside of Porto Rico, had a perfect legal right to come to Porto Rico and invest their money in Porto Rico and form either a general partnership or a limited partnership, as they might see fit; and that such partnership, whether general or limited, would have the same rights of removal as if one of these gentlemen alone were the defendant in a suit similar to this. ·

Coming to the thirteenth ground in this application for a rehearing, counsel for the People of Porto Rico try to make it appear that these six gentlemen by forming this limited partnership ceased to be citizens of any country or of any state or of any territory other than Porto Rico. The only answer I can make to this contention is that counsel for the People of Porto Rico seem to fail to distinguish between a limited partnership and a corporation.

The fourteenth ground set forth in this application for a rehearing is to the effect that it does not appear from any of the

papers filed in this case that Russell & Company, Sucrs., S. en C., are domiciled in any other country, state or territory than Porto Rico. In the opinion of the writer the limited partnership operating under the name of Russell & Company, Sucrs., S. en C., has no domicil distinct and separate from the domicil of the gentlemen who compose such partnership.

The fifteenth and last ground in this application for a rehearing shows that counsel for the People of Porto Rico have failed to read the petition for the transfer of the case. It is alleged in this fifteenth ground that it does not appear from the petition for the transfer that the matter or amount of the controversy in said cause exceeds the sum or value of $3,000, exclusive of interest and costs. This statement is expressly set forth and is found at page 13 of the transcript of the record filed in this court, and it is sworn to by Mr. H. P. Orde, on March 8, 1921, he being one of the defendants.

There is one more feature of this unusual proceeding which it is rather embarrassing for the writer of this opinion to dwell upon, but silence might be misunderstood; and for that reason it is deemed proper to conclude this opinion by reference to the singular conditions which surround this application for a rehearing. The writer of this opinion assumed his duties as judge of this court after the first application for a remand had been denied, such ruling having been made by the Honorable Peter J. Hamilton, who was the judge of this court previous to the 7th day of May, 1921. Three days after the retirement of Judge Hamilton the petition for a rehearing was filed by the Attorney General of Porto Rico. There has likewise been presented to this court what purports to be a decision of the supreme court of Porto Rico, being in the form of an opinion

by the Honorable Adolph G. Wolf, Associate Justice, under date of May 17, 1921, which is based upon an application made to the supreme court of Porto Rico by the Attorney General of the People of Porto Rico for a writ of certiorari to the clerk of the Insular district court of Ponce, from which court this case has been removed to this court.

The writer of this opinion has very great respect for Justice Wolf and for his associates upon the supreme court of Porto Rico. The writer of this opinion also considers that all the decisions and opinions of the supreme court of Porto Rico are entitled to great weight and consideration and careful study when they are presented to this court. Therefore, the opinion signed by his Honor, Justice Wolf, has been thoroughly studied by the undersigned before reaching a decision in the present controversy. The trouble is, however, that the Supreme Court of the United States has decided numerous times that the question of lawful removal or unlawful removal must be decided only by the Federal court itself, subject to the proper appellate procedure to another and higher Federal court, which shall effect the remand desired if such remand should be improperly denied.

Reference is had first to the case of the Home L. Ins. Co. v. Dunn, found in 19 Wall. 214, 22 L. ed. 68. It is there held that when a state court refuses to recognize the removal of a cause and further proceedings are had therein, the order made or judgment rendered is subject to review and reversal by the Federal court, and the power of paramount and final decision rests with the latter. It is furthermore held in the case of Carson v. Dunham, 121 U. S. 421, 30 L. ed. 992, 7 Sup. Ct. Rep. 1030, that after a cause has been removed into

People v. Russell & Co.

the Federal court the state court can proceed no further until its jurisdiction has been in some way restored.

Reference may also be had to the case of Kern v. Huidekoper, 103 U. S. 485, 26 L. ed. 354. The Supreme Court there says distinctly that when the statute for the removal of a cause has been complied with, no action by the state court can prevent the removal. The very distinguished Chief Justice Waite in the year 1884 wrote an opinion which is found in 111 U. S. 134, 28 L. ed. 378, 4 Sup. Ct. Rep. 353, in the case of the Chesapeake & O. R. Co. v. White. In this case the Supreme Court was called upon to decide the proper method of proceeding where the state court insisted upon proceeding with the trial of a case after it had been properly removed from such state court to the Federal court. It was argued that there might be a remedy for this improper action by means of a writ of prohibition, or by means of a complaint in the nature of contempt of court. The Supreme Court of the United States, however, distinctly holds that the proper remedy is by writ of error after final judgment. The court distinctly holds that where a sufficient case for removal had been made the rightful jurisdiction of the state court ceased, and such state court could not properly proceed any further.

Many other decisions of the Supreme Court of the United States might be cited, but it seems to me sufficient to refer to an old case in 16 Pet. 97, 10 L. ed. 900, entitled Gordon v. Longest, which has been cited and approved at least a hundred times. It is there held that every step subsequently taken in a state court after the proper application for removal to a Federal court is coram non judice.

People v. Russell & Co.

It is therefore apparent that the distinguished justice of the supreme court of Porto Rico either overlooked these numerous decisions of the Supreme Court of the United States, or that he deemed the same inapplicable upon the theory that Porto Rico is not a state. But the court to which this case was removed, being a Federal court established under an act of Congress, must have necessarily the same power and authority with respect to the removal of causes as if Porto Rico were a state; otherwise this court would not be a Federal court. The very purpose of the creation of this Federal court was the same as is expressed by Justice M'Lean of the United States Supreme Court nearly eighty years ago in the case last cited, to the effect that one great object in the establishment of the courts of the United States and regulating their jurisdiction was to have a tribunal in each state presumed to be free from local influence; and to which court all who are nonresidents or aliens may resort for legal redress; and that this object would be defeated if any state judge in the exercise of his discretion might deny the removal of a cause to a party entitled to it.

In conclusion, the writer of this opinion regrets extremely that the attitude of the attorney general of Porto Rico in this present controversy has been such as to require the present judge of this court to decide a question already passed upon by his own predecessor, and in apparent conflict with the informal views of an honorable associate justice of the supreme court of Porto Rico. It is the purpose and desire of this court to operate in complete harmony with the Insular courts of Porto Rico. It is certainly fair that this court should request all counsel practising before it, whether representing

XII. Porto Rico.—21.

People v. Russell & Co.

private clients or whether representing the People of Porto
Rico, to so present their cases as to promote harmony between
the two systems of courts in this Island rather than tending
to promote conflict. It is furthermore observed that the opin-
ion of the Honorable Associate Justice Wolf does not conclude
with any specific statement or direction that the order of the
Insular district court of Ponce is annulled, or is declared to be
annulled; but merely expresses the view of the writer of that
opinion that the action of the clerk of the Insular district
court of Ponce should be annulled.

It is of course quite possible that this case is one that should
be remanded. The natural desire of the judge of this court
would be to remand the case if it is one which should be re-
manded. This court has no desire to occupy its time and at-
tention with the trial of cases not properly brought before
it. If the order in this case denying the rehearing is an er-
roneous order, the People of Porto Rico has one of three rem-
edies, as outlined in a case reported in Ex parte Harding, 219
U. S. 363, 55 L. ed. 252, 37 L.R.A.(N.S.) 392, 31 Sup. Ct.
Rep. 324, modified and amplified and discussed at length by
the decision in Ex parte Park Square Auto. Station, 244 U. S.
412, 61 L. ed. 1231, 37 Sup. Ct. Rep. 732, both of the opinions
being written by the late lamented Chief Justice White. He
makes it clear that where a case is improperly removed and
should be remanded, but the Federal trial court refuses such
remand, the only proper remedy is either by mandamus to the
Federal appellate court in extraordinary cases, or by means of
a writ of error or appeal or certiorari in cases not extraordinary.

For the reasons herein set forth the petition for rehearing

People v. Russell & Co.

is denied, and the former opinion rendered by his Honor Judge Hamilton is approved and confirmed.

It is so ordered.